**Barbara SIMON and Eugene Simon, Plaintiffs,**

**v.**

**George HEALD and Gerard Schad, Defendants.**

Superior Court of Delaware, New Castle.

Submitted March 26, 1976.

Decided June 4, 1976.

Malvyn A. Woloshin, of Woloshin & Tenenbaum, Wilmington, for plaintiffs.

William F. Taylor, of Young, Conaway, Stargatt & Taylor, Wilmington, for defendant George Heald.

Joseph J. Farnan, Jr., of Sullivan, Hurley, Farnan & Falasca, Wilmington, for defendant Gerard Schad.

CHRISTIE, Judge.

This is an action against Gerard Schad, a Delaware State trooper, (and also against George Heald, the driver of an automobile which struck plaintiff's vehicle in the rear) for damages resulting from a collision on the south-bound lanes of Interstate 95 near Talley Road. Plaintiff alleges that the accident was proximately caused by a signal negligently given by the police officer as the plaintiff passed the officer in her vehicle. Plaintiff interpreted the signal as a "stop" command and, as she slowed, the vehicle operated by defendant George Heald, who was behind her, collided with her. Th police officer has moved to dismiss the complaint. The issue here is whether the doctrine of governmental or sovereign immunity precludes possible individual liability on the part of the police officer under the circumstances here present.

■ The law of governmental immunity in Delaware as it applies to the State, the State's agencies and its policy level officers is that there is no liability in tort for policy level decisions or discretionary actions done within the scope of official duty absent wanton or reckless conduct. *Holden v. Bundek,* Del.Super., 317 A.2d 29 (1972); *Pajewski v. Perry,* Del.Super., 320 A.2d 763 (1974); and *Shellburne, Inc. v. Roberts,* Del.Supr., 238 A.2d 331 (1968).

However, it is clear that a State police officer does not automatically fall within the category of State officials granted that form of governmental immunity mentioned in the cases cited above. There is no Delaware case law which specifically deals with the issue of whether a police officer may be held liable for negligent acts he is alleged to have committed in connection with his official duties.

In a number of other jurisdictions, lower level State officials are held to be immune from personal liability, but only in those instances where they were involved in *discretionary* rather than *ministerial* functions. See Prosser, *Law of Torts,* Sec. 132 at 987 et seq. (1971 Ed.) and 2 Harper and Jones, *The Law of Torts,* Sec. 29.10 at 1638 et seq.

The Federal Courts have extended the immunity usually given to policy-making officials to middle-range officials and a qualified immunity to lower levels of State officials. *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Johnson v. Anderson,* D.Del., 370 F.Supp. 1373 (1974); *United States, ex rel. Fear v. Rundle,* 506 F.2d 331 (3rd Cir., 1974).

■ In most State courts, however, the test for immunity for any officials below the executive level is primarily a test of whether or not the official's function at the time of his alleged negligence was ministerial as opposed to discretionary.[1]

It should be noted that the crucial determination is not whether or not a police officer's *position* involves the exercise of discretion, but rather the issue is whether or not the *activities* which the officer was performing at the time of his alleged negligence were discretionary. See *Harvey v. O'Brien,* (unreported letter opinion by

---

[1]. Immunity will not lie where there is wanton, reckless or malicious intent involved. Nor is there immunity granted where the officer is clearly outside the scope of his duties. There is here, however, no allegation based on these aspects of the qualified governmental immunity doctrine.

Walsh, J., 911 C.A. 1973, dec. October 10, 1975). This distinction is significant in view of the policy behind governmental immunity as it applies in such cases. It is sometimes said that, in order to prevent overcaution and a lack of zealousness on the part of public employees charged with the exercise of their individual judgment, State employees must be free from possible personal liability in the use of their discretion even if discretion is exercised negligently. *Ammlung v. City of Chester,* 224 Pa.Super. 47, 302 A.2d 491 (1973); *Scheuer v. Rhodes,* supra, 416 U.S. at p. 240, 94 S.Ct. 1335. The acts of such an employee, however, where the employee (regardless of the title of his office) is not exercising discretion but merely performing routine duties, would not be susceptible to the potential danger of overcaution. See Jennings, *Tort Liability of Administrative Officers,* 21 Minn.L.Rev. 263 (1937).

The case of *United States ex rel. Fear v. Rundle,* supra, provides a good example of the emphasis the law places on the duties being performed by the employee of the State rather than his position per se. This case involved a suit by a prisoner against prison physicians for negligent treatment. The Court ruled that, because these doctors were required to treat the prisoners, their specific responsibilities were ministerial and, therefore, the doctors could be held personally liable for their own negligence. See also *Seybold v. Gunther,* E.D. of Pa., 393 F.Supp. 604 (1975).

Turning to the facts of the case at bar, it appears that Officer Schad, at the time of the signal was attempting to aid a motorist whose vehicle was disabled on the shoulder of the highway. In his effort to get the motorist across the highway to a nearby garage, he had made his hand motion to the plaintiff. The decision to help a stranded vehicle on a busy highway could be pictured as an example of a discretionary act. On the other hand, it could be regarded as a typical routine duty.

A somewhat similar case is *Czyzewski v. Schwartz,* 110 N.J.Super. 255, 265 A.2d 173 (1970). In that case, a police officer gave a hand signal to a motorist, and it was alleged that the signal was negligently given and that it resulted in a rear-end collision. The officer who gave the hand signal was found to have been simply responding to an order in the normal course of a radar-determined speeding arrest. The appellate Court reversed a decision of the lower Court granting the officer immunity and held that the trooper involved was not exercising discretion and, consequently, he was not entitled to personal immunity as a government employee.

In the case at bar, Trooper Schad's conduct was self-initiated, and his decision to signal the plaintiff was of his own choice. Compare *Dubree v. Commonwealth,* 8 Pa. Cmwlth. 567, 303 A.2d 530 (1973). His behavior was within the scope of his duties and could be described as discretionary, but, on the other hand, it is one of the routine duties of a highway patrol officer to investigate cars stopped on highway shoulders and to render aid to those stranded on a highway because of accidents or mechanical failures.

While there is little difficulty in applying the discretionary-ministerial distinction in cases involving high level executives on the one hand and clerk-typists on the other, it is not an easy task to apply the test of the duties of police officers. In one sense, much of a police officer's conduct involves discretion. An officer must continuously choose between warnings and arrests. He must decide whether a minor problem should be passed up in order to concentrate on a more serious one. He must decide which vehicles to signal and what form of signal to give. Discretion is a constant factor in a police officer's day.

◼ However, a police officer's duties and his methods of carrying out these duties are routine procedures, sometimes

called standard operating procedures. What he does and how he does it is often the product of routine training and orders rather than discretion as that word is used in *Scheuer v. Rhodes,* supra, and *Fear v. Rundle,* supra. The acts of aiding a stranded motorist and signaling to passing traffic are not such executive level decisions that an officer is entitled to be protected from personal liability if he acts negligently.[2]

Thus, I will generally follow the decision in *Czyzewski v. Schwartz,* supra. However, I am of the opinion that, if an ambiguous traffic signal is negligently given, the possible liability of the officer as an individual should not depend on an artificial test of whether or not the officer was ordered by someone else to give the signal or to conduct the project which gave rise to the giving of the signal. It is apparent that the State should provide insurance for its police officers in order that the ambiguous and precarious distinction between discretionary and ministerial functions will neither dampen the zealous performance of an officer's duties nor deny adequate redress for a citizen injured on account of the negligence of a State employee.

In summary, I hold that, where a State police officer is performing routine functions, he may be held personally liable for injuries he causes by his negligence just as employees of other employers may be held personally liable. Governmental immunity does not protect the individual State employee from possible liability for the negligence alleged to have taken place in this case.

Defendant Schad's motion to dismiss the action as to him is denied. IT IS SO ORDERED.

---

2. While this Court will not, at this stage of the proceedings, pass judgment on the factual issues of this case, it should be noted that merely rejecting immunity in no way implies the existence of negligence on the part of Officer Schad. In order for plaintiff to prevail against the officer, plaintiff must prove the alleged negligence.