Homer C. YOUNGBLOOD and wife
Elvie Youngblood, Plain-
tiffs/Appellants,

v.

Ray CLEPPER and Robert L. Beard,
Defendants/Appellees.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Feb. 26, 1993.

Permission to Appeal Denied by
Supreme Court June 7, 1993.

Hugh P. Garner, Garner, Lewis & Prick-
ett, Chattanooga, for plaintiff/appellants.

Charles W. Burson, Atty. Gen. and Re-
porter, David M. Himmelreich, Deputy
Atty. Gen., Nashville, for defendant/appel-
lee Ray Clepper.

Phillip A. Fleissner, Cynthia D. Hall,
Fleissner, Cooper & Marcus, Chattanooga,
for defendant/appellee Robert L. Beard.

## OPINION

CANTRELL, Judge.

In this action against a sergeant in the
Tennessee Highway Patrol for negligently
directing traffic, the trial judge granted
summary judgment to the defendant. We
affirm on the ground that the defendant is
immune from suit under the qualified im-
munity granted to state officers perform-
ing discretionary functions.

### I.

On August 12, 1984, Sergeant Ray Clep-
per was called from his home in Kimball to
assist in working a fatal accident on the
interstate going east down Monteagle
Mountain. The officers already on the
scene had stopped the eastbound traffic at
the top of the mountain while the wreckage
was being cleared away.

The highway down the mountain has
three lanes for traffic at the top and nar-
rows to two lanes about a mile from the
bottom, just below the "last big cut." At
the bottom, where the highway levels out
in the valley, one of the remaining lanes
was closed for repairs on the date in ques-
tion,

After the first wreck had been cleared
away and the traffic released from the top
of the mountain, the highway remained
congested because of the two bottlenecks
where the highway narrowed from three
lanes to two and finally to one. With traf-
fic virtually at a standstill, Sgt. Clepper

instructed another trooper on the scene to station himself above the first bottleneck and direct the traffic to merge into the two lanes. Sgt. Clepper took a position at the foot of the mountain to keep traffic moving into the single lane that remained open.

The plaintiff, Homer C. Youngblood, was driving a heavily loaded tractor-trailer in an easterly direction. He reached the top of the mountain at approximately 7:55 p.m. after the traffic had been released. At some point above the site where the trooper was directing traffic, Mr. Youngblood's brakes began to malfunction. He rounded a corner and was confronted with the traffic blocking the two open lanes of the highway. He attempted to pull off next to the right-hand lane on the outside of the mountain but he hit the rock wall created by the "cut" through the mountain and suffered severe injuries.

Mr. Youngblood sued Sgt. Clepper and the trooper claiming they were negligent in selecting the site for controlling the traffic, resulting in traffic backing up below a blind curve. In addition, he alleged that the two defendants were negligent in not providing an emergency lane for eastbound trucks since it was common knowledge that trucks frequently experienced brake failure on the way down the mountain.

Sgt. Clepper filed an answer denying any liability and raising, among other defenses, the defense of governmental immunity.

The trial judge granted summary judgment to Sgt. Clepper and directed the entry of a final judgment in his favor.

## II.

■ We think the trial judge was correct. There are, however, two points to be made with respect to the immunity of Tennessee highway patrol officers for actions against them individually. First, the Tennessee Governmental Tort Liability Act only applies to municipal, county, and other local governments. Thus, the act is inapplicable to the highway patrol officer's liability since the act does not affect the state or its employees. *Tennessee Dep't of Mental Health and Mental Retardation v. Hughes,* 531 S.W.2d 299, 300 (Tenn.1975).

Second, since the accident in this case occurred prior to January 1, 1985, the absolute immunity now given to state employees in Tenn.Code Ann. § 9–8–307(h) does not apply. Thus, the case turns on the question of whether Sgt. Clepper was covered by a common law immunity afforded public employees performing discretionary functions. *See State ex rel. Butler v. Alexander,* 634 S.W.2d 596, 600–601 (Tenn. App.1982).

■ We think this immunity covers the actions of Sgt. Clepper in acting to relieve the traffic congestion on Monteagle Mountain on the evening of August 12, 1984. While the immunity with which we are dealing is generally recognized in cases involving so called quasi-judicial functions, *State ex rel. Robertson v. Farmers' State Bank,* 162 Tenn. 499, 505, 39 S.W.2d 281, 282 (1931), we think the common denominator for such immunity, whether applicable to the judicial or executive branches, is a discretion exercised by state officers. *See Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). In *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), the United States Supreme Court elaborated on the breadth of the immunity recognized in *Pierson v. Ray:*

> The *Pierson* Court was also confronted with whether immunity was available to that segment of the executive branch of a state government that is most frequently and intimately involved in day-to-day contacts with the citizenry and, hence, most frequently exposed to situations which can give rise to claims under § 1983—the local police officer.

> \*    \*    \*    \*    \*    \*

The Court noted that the "common law has never granted police officers an absolute and unqualified immunity," *id.,* at 555, 87 S.Ct., at 1218, but that "the prevailing view in this country [is that] a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved," *ibid.;* the Court went on to observe that a "policeman's lot is not so unhappy that he must choose

between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does."

416 U.S. at 244–45, 94 S.Ct. at 1690–91.

Although *Pierson v. Ray* and *Scheuer v. Rhodes* were civil rights actions under 42 U.S.C. § 1983, it is clear that the immunity recognized in those cases was not peculiar to § 1983 actions. In *Pierson v. Ray* the court said:

"[T]he defense of good faith and probable cause, which the Court of Appeals found available to the officers in the common-law action for false arrest and imprisonment, is also available to them in the action under § 1983."

386 U.S. at 557, 87 S.Ct. at 1219.

Thus, the immunity generally available at common law was applied to § 1983 actions, it was not created for that sole purpose.

Citing an earlier non–§ 1983 case, the *Scheuer* court said:

"To be sure, the occasions upon which the acts of the head of an executive department will be protected by the privilege are doubtless far broader than in the case of an officer with less sweeping functions. But that is because the higher the post, the broader the range of responsibilities and duties, and the wider the scope of discretion, it entails. It is not the title of his office but the duties with which the particular officer sought to be made to respond in damages is entrusted—the relation of the act complained of to 'matters committed by law to his control or supervision,' *Spalding v. Vilas, supra,* 161 U.S. [483], at 498, 16 S.Ct. [631], at 637 [40 L.Ed. 780]—which must provide the guide in delineating the scope of the rule which clothes the official acts of the executive officer with immunity from civil defamation suits." [*Barr v. Matteo* ], 360 U.S. [564], at 573–574, 79 S.Ct. [1335], at 1340–1341 [3 L.Ed.2d 1434].

416 U.S. at 247, 94 S.Ct. at 1692.

In summing up the extent of the common law immunity the court in *Scheuer v. Rhodes* said:

These considerations suggest that, in varying scope, a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct.

*Id.* at 247–48, 94 S.Ct. at 1692.

Surprisingly, few cases have dealt specifically with the immunity of law enforcement officers in directing traffic. In *Abo El Ela v. State,* 468 N.W.2d 580 (Minn.App. 1991), a police officer was alleged to have been negligent in using hand signaling to stop a motorist during an air-ground speed enforcement. The court held that only safety considerations were left to the officer in deciding whether to use hand signaling, and decisions based on safety alone were not protected. *Id.* at 582.

In *Simon v. Heald,* 359 A.2d 666 (Del.Super.1976), a police officer motioned with his hand to a motorist in an effort to get the motorist, whose vehicle was disabled, to cross the highway to a nearby garage. The signal was misinterpreted and resulted in an accident. While recognizing the existence of immunity for discretionary acts, the court held that the officer had been performing a routine function for which he would be personally liable for any negligence. *Id.* at 669. The court reasoned:

[A] police officer's duties and his methods of carrying out these duties are routine procedures. * * * The acts of aiding a stranded motorist and signaling to passing traffic are not such executive level decisions that an officer is entitled to be protected from personal liability if he acts negligently.

*Id.* at 668–69. Moreover, the court noted that it was the state's responsibility to pro-

vide insurance for its police officers so that the ambiguous distinction between discretionary and ministerial functions would "neither dampen the zealous performance of an officer's duties nor deny adequate redress for a citizen injured." *Id.* at 669.

We choose to follow the reasoning reflected in the court's earlier language recognizing the difficult position in which law enforcement officers are placed:

> In one sense, much of a police officer's conduct involved discretion. An officer must continuously choose between warnings and arrests. He must decide whether a minor problem should be passed up in order to concentrate on a more serious one. He must decide which vehicles to signal and what form of signal to give. Discretion is a constant factor in a police officer's day.

*Id.* at 668.

In the present case Sgt. Clepper was not merely dealing with one vehicle. Instead, Sgt. Clepper was confronted with a large-scale traffic jam on the descending lanes of the Monteagle Mountain highway. He chose to try to solve the problem by sending the other trooper up the mountain to direct traffic in the merging process and in stationing himself at the foot of the mountain for a similar purpose. He was free to make that decision without fear of being second-guessed by the judiciary. Thus, we think the trial judge, under the "planning-operational" distinction stated in *Bowers ex rel. Bowers v. City of Chattanooga*, 826 S.W.2d 427, 430 (Tenn.1992),[1] correctly granted him summary judgment.

The judgment of the court below is affirmed and the cause is remanded to the Circuit Court of Marion County for any further proceedings necessary. Tax the costs on appeal to the appellant.

TODD, P.J., and LEWIS, J., concur.

---

1. We recognize that *Bowers* dealt with the discretionary function exception under the Tennessee Governmental Tort Liability Act. However, we believe the test for distinguishing discretionary acts from operational acts as set forth in that opinion is applicable to our analysis of common law immunity.