**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Donald MCGRAW, Defendant–
Appellant.**

No. 01–2647.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 27, 2003.

Decided March 27, 2003.

Before KANNE, DIANE P. WOOD, and EVANS, Circuit Judges.

ORDER

Donald McGraw appeals from his conviction and sentence for distribution of cocaine base and theft of over $8,500.

In November 1999, McGraw and two codefendants, John Rose and Gerald Ward,

were indicted. Soon afterwards, Rose struck a deal with the government and a superseding indictment was issued against Ward and McGraw. McGraw was charged in count 1 with possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), in count 2 with conspiracy in violation of 21 U.S.C. § 846, and in count 3 of theft in violation of 18 U.S.C. §§ 641 and 2. He was tried, convicted, and sentenced to 121 months imprisonment on counts 1 and 2 and 120 months imprisonment of count 3, all to run concurrently.

During the 1990s, McGraw, Rose, and Ward were officers with the Chicago Housing Authority (CHA) Police Department. In 1998 a drug dealer named Nazario Hernandez became an informant for Rose. Rose paid Hernandez for information by providing him with single-use bags of heroin, crack cocaine, and marijuana. Rose said McGraw supplied two of the bags of crack cocaine with which he paid Hernandez.

As we said, after the original indictment was returned and before the superseding indictment was issued, Rose began to cooperate with the government. In that role, he provided information that in November 1998 McGraw notified him and Ward that there was drug dealing at a CHA housing development known as the Wells Extensions. The three officers went to that location, where they encountered teenagers Able Collins and Willie Martin in the lobby of the building. Collins was holding a bag of crack cocaine. The officers apprehended Collins and seized the bag. Meanwhile, Martin had run up the stairs, and the officers pursued him into an apartment. The officers searched the apartment and found a semi-automatic pistol and a ball of crack cocaine that Rose described as being slightly smaller than a ping-pong ball. Rose testified that Ward handed the ball of cocaine to McGraw, who

put it in his pocket. The crack was never inventoried as evidence. Instead, Rose and McGraw agreed that McGraw would sell it and the two would share the proceeds. A day or two later, McGraw gave Rose $150, which Rose assumed was his share of the proceeds from the sale.

In February 1999, Rose, Ward, McGraw, and McGraw's partner responded to a call concerning squatters in an apartment in the CHA's Robert Taylor Homes. When the officers entered the apartment, they saw a man named Smith throw something out the window. Searching the ground outside the window, the officers found 10 small packages of crack cocaine. The officers searched the apartment, and Rose found a quart-sized, zip-top bag with a picture of an apple on it. Inside the bag were 273 small pink plastic bags containing crack cocaine as well as a ball of crack, which weighed about a quarter of an ounce. Rose testified that when they left the apartment, McGraw was holding the crack cocaine they had seized. Later in the day, McGraw showed Rose the crack. Rose took the larger zip-top bag containing the ball of cocaine and McGraw kept the smaller bags.

What Rose did not know is that by this time-February 1999—his informant Hernandez had begun to cooperate with the FBI. The FBI recorded several conversations involving Rose and Hernandez, including a telephone call between them on February 26, 1999. During the call, Rose told Hernandez that he had a "boulder" or a "ball" for him. At trial, Rose explained that these were references to the ball of cocaine seized from Smith the day before. Rose intended to use the ball of crack to pay Hernandez for two jackets. Rose met with Hernandez at a McDonald's and gave him an "eight ball," which is a three-to-four gram ball of crack cocaine, in exchange for the two jackets. Rose testified

that this was the same ball of crack cocaine obtained the day before at the Robert Taylor Homes.

The meeting at the McDonald's was being watched by FBI Special Agent Dennis Timony. SA Timony testified that he followed Rose and Hernandez when they left the parking lot, drove around for a half hour, and then returned to the lot. Rose left the lot and SA Timony picked up Hernandez, who gave him a zip-top bag containing a marble-sized ball of what appeared to be crack cocaine. SA Timony had the ball in his possession for a couple minutes and then turned it over to FBI Special Agent Patrick Murphy. At trial, SA Murphy testified that government exhibit 3 was that same ball of crack cocaine in the zip-top bag.

Rose also testified at McGraw's trial that he received a telephone call from Hernandez on March 5, 1999, in which Hernandez informed him that someone was cooking crack cocaine in apartment 708 of the CHA's Harold Ickes development. Hernandez also told him that about $10,000 was hidden in a heater vent in the apartment. Rose told McGraw about the money. Rose, McGraw, and a Reginald Harris went to the apartment, where they found the cooking operation. None of the drug paraphernalia was collected as evidence. What the officers looked for instead was the money. Rose found it and gave it to McGraw. The three officers then went to McGraw's house and divided the loot. Needless to say, the money was not logged in as evidence.

■ In this court, McGraw's appeal challenges first the admission into evidence of the ball of crack cocaine seized at the Robert Taylor Homes, government exhibit 3 at his trial. He contends that the exhibit was not connected by any credible evidence to him, specifically because at trial there was no testimony from Hernan-

dez that he received the drugs from Rose. In response, the government argues that there was sufficient circumstantial evidence to support the admission of the exhibit to allow the jury to consider whether the exhibit was, in fact, the cocaine that McGraw and the others confiscated from Smith. We agree.

Our review of the district court's evidentiary ruling is for an abuse of discretion. *United States v. Smith,* 308 F.3d 726 (7th Cir.2002). Under Rule 901(a) of the Federal Rules of Evidence, the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The Advisory Committee notes to the rule state that the requirement of proving authenticity "falls in the category of relevancy dependent upon fulfillment of a condition of fact and is governed by the procedure set forth in Rule 104(b)" of the Federal Rules of Evidence. Under *Huddleston v. United States,* 485 U.S. 681, 690, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), in determining whether there is sufficient evidence to meet the requirements of Rule 104(b), the "court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence." The court's role is to examine the evidence to determine whether the jury could reasonably find the conditional fact by a preponderance of the evidence.

McGraw contends that what the district court did in this case was to improperly apply a presumption of regularity which applies in ordinary chain of custody cases to this situation. We disagree. The district judge specifically noted that there was a difference between the typical chain of custody case and this case, in which "the chain is broken really between two con-

fessed drug dealers." For that reason, the judge stated that he was approaching the issue cautiously.

We find that there was sufficient circumstantial evidence of authenticity. That evidence included, among other things, that Smith testified that the zip-top bag marked exhibit 3 looked exactly like the bag taken from him except that by the time of trial it was coated with black fingerprint powder. Rose testified that he took a zip-top bag with an apple pictured on it during the search of Smith's apartment. He also testified that he gave it to McGraw while they were still in the apartment and that later in the day he retrieved the bag from McGraw. He testified that the following day he gave the bag to Hernandez. SA Timony testified that he picked up Hernandez within minutes after the meeting between Hernandez and Rose. Hernandez gave him the bag. Within a few minutes, SA Timony gave it to SA Murphy. Murphy testified to that effect. We find that the jury could reasonably have concluded that the exhibit and the bag seized from Smith were one and the same.

■ McGraw also mounts a challenge to his sentencing proceedings. He contends that the district judge erred in relying on the presentence report regarding the amount of drugs for which he was held accountable. He said it was not foreseeable to him that the conspiracy would involve more than five grams of crack cocaine. The district judge found that there was sufficient evidence in the record to support the jury's determination that the conspiracy involved more than five grams of the drug. He then adopted the analysis and conclusion set out in the presentence investigation report that McGraw was accountable for more than 35 but less than 50 grams. We must uphold that finding unless it is clearly erroneous. *United States v. Wash,* 231 F.3d 366 (7th Cir. 2000).

We have repeatedly upheld similar findings. *See, e.g., United States v. Brumfield,* 301 F.3d 724 (2002); *United States v. Taylor,* 135 F.3d 478 (1998); *United States v. Pippen,* 115 F.3d 422 (1997). Reference to the findings and rationale in a presentence report is sufficient to satisfy the requirements of Rule 32 of the Federal Rules of Criminal Procedure and to allow us to review the court's findings. *Taylor.* We find no error.

Accordingly, the judgment of conviction and the sentence are AFFIRMED.