Steve W. ROGERS, Plaintiff–Appellant,

v.

Harold GOODING, Defendant–Appellee.

No. 02–5891.

United States Court of Appeals,
Sixth Circuit.

Nov. 24, 2003.

Phillip L. Davidson, Nashville, TN, for Plaintiff–Appellant.

Dawn M. Jordan, Asst. Atty. General, Michael B. Leftwich, Tennessee Attorney General's Office, Civil Litigation & State Services Div., Nashville, TN, for Defendant–Appellee.

Before KEITH, MARTIN, and SUTTON, Circuit Judges.

KEITH, Circuit Judge.

Plaintiff–Appellant Steve W. Rogers ("Rogers") appeals the grant of Defendant–Appellee Harold Gooding's ("Gooding") motion for summary judgment in this case. Rogers brought suit under 42 U.S.C. § 1983 (" § 1983") against Gooding, a Tennessee Highway Patrol Officer, who Rogers claims used excessive force against him during a tax protest at the Tennessee State Capitol on July 12, 2001. Gooding filed a motion for summary judgment claiming that he was entitled to qualified immunity as a mater of law. The district

court granted Gooding's motion. For the reasons set forth below, we AFFIRM the district court's judgment.

## I. BACKGROUND

On July 12, 2001, the Tennessee House and Senate were scheduled to vote on a proposed income tax. The public learned of the expected vote and turned out in large numbers to protest the possible passage of an income tax. Rogers was one of those protestors. Gooding was posted at the House of Representatives to protect the representatives. The Commissioner of Safety, Mike Greene, instructed Gooding that the Speaker of the House did not want anyone arrested.

At approximately 5:50 p.m., Rogers attempted to gain access to the Senate Chambers to watch the legislative session. As Rogers tried to open the doors, a Sergeant–at–Arms told him that he could not go into the Senate Chambers. The Sergeant–at–Arms told Rogers that he could watch the debate from the balcony. Rogers then made his way to the House Chambers. Rogers went to the top of the stairs and attempted to open the doors to the balcony, but they were locked. Gooding ordered Rogers to stop trying to enter the House Chambers's balcony door and to come downstairs. Gooding explained that the doors were locked and would be open later. After Rogers came down to the bottom of the stairs, Gooding told Rogers to leave if he could not obey the rules. Gooding then led Rogers away from the House Chambers and toward the stairs. Gooding leaned Rogers against the rail and brought Rogers's arms up as if to handcuff him. Gooding then let Rogers go without handcuffing him. Rogers informed Gooding that he was told that he could watch the debate. Gooding explained to Rogers that he could not come back to the House Chambers until 7:30

p.m., at which time he could gain access to the balcony. Gooding then walked back to his post at the House Chambers.

Ten minutes later, Rogers returned to the stairwell where Gooding was positioned. Rogers situated himself four feet away from Gooding. At this point, Gooding leaned around and said, "get out of my face." Rogers responded, "I'm not in your face." Gooding then leaned back down in front of Rogers and stated, "well get out of my presence." Rogers responded, "I'm not in your presence." Gooding said, "I told you to get out of here" and Rogers stated, "I'm going to wait right here until 7:30, so I can go up those stairs like you told me I could, like everybody has told me I could ..." At that point, Gooding struck Rogers in the neck. Rogers turned around, saw a television camera, and lifted his arms as if to say that he was doing nothing wrong. Gooding then began to lead Rogers out of the area. Gooding then grabbed Rogers around the arms and began pushing him. Gooding then spun Rogers around and pushed Rogers down to the floor. After Rogers was down, Gooding grabbed his legs and began dragging him across the floor.

Rogers brought this case against Gooding on August 3, 2001 alleging excessive force. Rogers filed an amended complaint on August 29, 2001 claiming a First Amendment violation and setting forth a state law claim for assault and battery. Gooding filed a motion for summary judgment on March 26, 2002 claiming that he was entitled to qualified immunity. On May 24, 2002, the district court granted Gooding's motion.

The district court based its decision on the express stipulations of fact from Plaintiff's Response to Defendant's Statement of Material Facts. Applying the two-step inquiry articulated by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct.

2151, 150 L.Ed.2d 272 (2001), the district court found that Gooding's actions in striking Rogers in the neck, pushing him to the ground, and dragging him out of the hallway, violated Rogers's right to be free from excessive force. The court then went on to determine whether the right was clearly established. The district court found that the totality of the circumstances disclosed substantial grounds for the officer to have concluded he had legitimate justification under the law for acting as he did. The district court noted Rogers's behavior in refusing to leave the restricted area. The district court relied upon *Saucier* in finding that a reasonable officer in Gooding's position could have believed that pushing Rogers out of the hallway in front of the chambers of the House of Representatives, where members of the legislature were about to enter, was a reasonable action taken to protect the members of the House and to ensure the safety and security of the area for others. Accordingly, the district court found that Gooding's actions were objectively reasonable and that he was entitled to qualified immunity.

On June 6, 2002, Rogers filed a motion for clarification because the summary judgment opinion did not address the claims in the amended complaint. On June 19, 2002, the district court granted the motion and dismissed the plaintiff's First Amendment claims and state law claims. Rogers filed a timely Notice of Appeal on July 5, 2002.

## II. DISCUSSION

We review a district court's grant of summary judgment *de novo*, using the same standard under Federal Rule of Civil Procedure 56(c) used by the district court. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir.1999) (en banc). We consider the record as it stood before the district court at the time of its ruling. *Niecko v. Emro*

*Mktg.Co.*, 973 F.2d 1296, 1303 (6th Cir. 1992). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We view the evidence, all facts, and any inferences that may be drawn from the facts, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

A. Qualified Immunity for the Excessive Force Charges

Qualified immunity is an affirmative defense that shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A court in this circuit undertaking a qualified immunity analysis must first determine whether the plaintiff has alleged a violation of a constitutionally protected right; if so, the court must examine whether the right was clearly established at the time of the alleged violation. *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

Having prevailed below in showing that Gooding used excessive force, Rogers primarily argues on appeal that the district court also should have concluded that the right violated was clearly established. We apply familiar principles in considering this question. The right allegedly violated cannot be asserted at a high level of generality, but, instead, "must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours

of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 639–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). As the Supreme Court explained in *Harlow,* the "reasonable person," in this instance, is a "reasonably competent public official [who] should know the law governing his conduct." *Harlow,* 457 U.S. at 819, 102 S.Ct. 2727. The Supreme Court held in *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), that an officer, sued in a civil suit, will be entitled to immunity if reasonably competent officers could disagree as to the reasonableness of the defendant officer's response. *Malley,* 475 U.S. at 341, 106 S.Ct. 1092. If a reasonably competent officer would not agree that the behavior was reasonable, however, then the defendant officer is not entitled to qualified immunity. *Id.* The burden of proving that the rights allegedly violated were clearly established falls upon the plaintiff, not the defendant. *Dominque v. Telb,* 831 F.2d 673, 676 (6th Cir.1987).

A constitutional right is "clearly established" if the issue has been determined by the Supreme Court or the Sixth Circuit. *Ohio Civil Serv. Employees Ass'n v. Seiter,* 858 F.2d 1171, 1177–78 (6th Cir.1988). The Supreme Court in *Saucier* noted as follows with regard to the defense of qualified immunity in excessive force cases:

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense ... Qualified immunity operates in this case, then, just as it does in others, to protect officers from the sometimes hazy border between excessive and acceptable force ... and to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.

*Saucier,* 533 U.S. at 205–06, 121 S.Ct. 2151 (internal citations and quotations omitted).

The *Saucier* holding is particularly instructive in this case. In holding that the defendants were entitled to qualified immunity in the *Saucier* case, the Court noted that the actions of the officers in dragging the protestor across a parking lot and violently shoving him into a van did not violate any clearly established principles. *Id.* at 208–09, 121 S.Ct. 2151. In that case, the officer was concerned that the protestor, who had unfurled a banner near a gate that was designed to separate the public from the speakers, was a threat to the Vice President. *Id.*

In this case, the facts and circumstances of the situation reveal that Gooding was faced with protecting the state legislators from the potential harm that could be caused by a large group of protestors, including Rogers. Rogers had gone into a restricted area and was actively led away from the area at 6:00 p.m. by Gooding, who told Rogers that the doors would not be open until 7:30 p.m. Rogers then returned to the area ten minutes later. Upon his return, Rogers placed himself in an area where Gooding could not miss his presence, thereby implicitly defying Gooding's authority. When Gooding told Rogers to clear himself from the area, Rogers openly defied him. Based on the totality of the circumstances, a reasonable officer in Gooding's position could have believed

that pushing Rogers out of the hallway was necessary to protect the legislators.

Furthermore, Rogers has not directed this court or the district court to any cases or other law to establish that Gooding violated any clearly established rights. Thus, the district court did not err in finding that Gooding was entitled to qualified immunity.

### B. Qualified Immunity for the State law Assault and Battery Charges

■ In response to the motion to clarify, the district court found that Rogers's assault and battery claim is a state law claim, which is precluded by qualified immunity and, therefore, is not actionable. Plaintiff argues that the granting of qualified immunity in an excessive force case does not preclude a state action for assault and battery. There is, however, Tennessee authority which applies qualified or good faith immunity to state law torts. In *Youngblood v. Clepper*, 856 S.W.2d 405 (Tenn.Ct.App.1993), a state trooper was sued for negligently directing traffic, causing the plaintiff to have a car accident and suffer injuries. The Tennessee Court of Appeals held that the state trooper was entitled to qualified immunity, akin to the common law immunity given to government employees performing discretionary functions. *Youngblood*, 856 S.W.2d at 406. In so holding, the court cited several United States Supreme Court decisions that discuss qualified immunity for government employees, such as police officers. *Id.* at 406–08. The court noted that the United States Supreme Court decisions involved civil rights actions under § 1983, but it was "clear that the immunity recognized in those cases was not peculiar to § 1983 actions." *Id.* at 407. The court then held that qualified immunity applied to the state law claims against the state officer. *Id.*

Thus, the district court properly applied the qualified immunity defense to the assault and battery claim.

### III. CONCLUSION

For the foregoing reasons we AFFIRM the district court's judgment.