Roger V. FIORDALISI, Plaintiff,

v.

Robert ZUBEK, Defendant.

No. 1:03 CV 908.

United States District Court,
N.D. Ohio,
Eastern Division.

Oct. 27, 2004.

William M. Saks, Cleveland Heights, OH, for Plaintiff.

Shawn W. Schlesinger, Steven G. Janik, Janik & Dorman, Cleveland, OH, for Defendant.

*MEMORANDUM OPINION AND ORDER*

ANN ALDRICH, District Judge.

Police officer Robert Zubek arrested Roger Fiordalisi, a 56 year old man, outside Hopkins Airport. Fiordalisi brings this action under 42 U.S.C. § 1983, claiming that Zubek intentionally used excessive force during and after the arrest, injuring him, punishing him for exercising his freedom of speech, and violating his rights under the First and Fourth Amendments. Fiordalisi also asserts claims for assault and battery and seeks punitive damages. Zubek claims qualified immunity and moves for summary judgment. For the reasons that follow, the court denies Zubek's motion.

## I. BACKGROUND

Between 5:00 and 6:00 p.m. on a Friday in October 2002, Fiordalisi was in his car stopped near the northern entrance to the airport baggage area, as he and his wife waited to pick up a niece and nephew. Fiordalisi's car was the fourth of five cars stopped in a no-parking zone, and his motor was running. Seeing Officer Zubek wave his finger at the front of the line of cars and apparently start writing a ticket for the first car, Fiordalisi started to pull away from the curb. Zubek seems to concede that Fiordalisi misinterpreted his finger motion as an instruction to pull away from the area. *See* Def.'s Mot. At 2. After Fiordalisi had driven a short distance, Zubek came over and said "you're violating a direct order." Fiordalisi said "What direct order? Baloney" and, according to Zubek, allowed his car to roll fifty to seventy-five feet forward. *See* Am. Comp. ¶¶ 7–8.

Zubek approached the car and asked to see Fiordalisi's driver's license, and Fiordalisi responded that he did not have it with him. Zubek ordered him to get out of the car, so he did so and put his hands behind his back. Zubek frisked Fiordalisi, handcuffed him, and started to push him toward the airport. While they walked, Zubek jerked Fiordalisi's handcuffed wrists up behind his back three or four times, causing the handcuffs to tighten, apparently to force him to move faster. When Fiordalisi said that Zubek should not be harassing him, Zubek slammed Fiordalisi's head twice into a metal corner of the airport's exterior wall. Fiordalisi claims he was humiliated and afraid and suffered head injuries. *See* Am. Comp. ¶¶ 9–10 and 17–22; Pl.'s Opp'n, Ex. F.

Fiordalisi contends that even though he never resisted arrest, and was handcuffed,

Zubek slammed his head into the wall to punish him for his criticism and to deter him from saying anything else. *See* Am. Comp. ¶¶ 11–13. Zubek claims that Fiordalisi "began to pull away" and, in order to regain control over him, Zubek "pressed Fiordalisi's body against the terminal wall." Zubek admits this caused Fiordalisi's head to hit the terminal wall twice, but he characterizes this as "minimal use of force ... necessary to regain control...." Def.'s Mot. at 3 (citing Zubek aff. ¶¶ 11–14).

Zubek arrested Fiordalisi and transferred him to the police station, where he was charged with driving without a license, operating a motor vehicle in order to flee an officer, and resisting arrest. *See* Def.'s Mot. at 3 (citing Fiordalisi dep. at 57–58 and Zubek aff. ¶¶ 15–16). Fiordalisi apparently had to spend the night in a cell. *See* Def.'s Mot. at 3 (Fiordalisi was "released the following evening"). Fiordalisi pled guilty to driving without a license and the other charges were dropped. Zubek concedes that Fiordalisi was licensed, *see* Def.'s Mot. at 2, but the record does not disclose whether Zubek attempted to verify that fact before arresting, handcuffing and jailing him.

Fiordalisi filed the complaint in May 2003 and added a request for punitive damages in December 2003. Count I asserts claims for assault, battery and excessive, wanton use of force, while Count II asserts a claim for violation of the federal constitutional right to freedom of speech.[1] *See* Am. Comp. ¶¶ 25–32. Zubek moves for summary judgment, asserting the defenses of failure to state a claim, statutory and common law immunity, conduct in good faith and with probable cause, assumption of the risk, failure to mitigate

damages and contributory negligence. Both sides seek a jury trial. Fiordalisi seeks $65,000 in compensatory and $100,000 in punitive damages, plus fees and costs under 42 U.S.C. § 1988.

## II.  LEGAL STANDARDS

### A.  Summary Judgment

The purpose of a motion for summary judgment is to determine if genuine issues of material fact exist to be tried. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hoover v. Radabaugh*, 307 F.3d 460, 465 (6th Cir.2002). The party seeking summary judgment bears the initial burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits establish the absence of genuine issues of material fact. *See Hoover*, 307 F.3d at 465 (citing *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548) (cites omitted). The movant discharges its burden by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* Summary judgment will be appropriate if the nonmoving party fails to establish the existence of an element essential to its case, and on which it will bear the burden of proof. *See id.* at 322, 106 S.Ct. 2548

Because Fiordalisi opposes summary judgment, his factual allegations are to be believed and all justifiable inferences drawn in his favor. *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989). But the ultimate burden of showing a genuine issue of material fact always remains on him. *See Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

---

**1.** Fiordalisi's jurisdictional statement refers to false imprisonment, *see* Am. Comp. ¶ 2, but the remainder of the amended complaint does not assert such a claim. On August 2, 2004

Fiordalisi filed a notice stipulating that he has not asserted a claim for seizure without probable cause or a claim for false imprisonment.

## B. Section 1983 Claim on Summary Judgment

Title 42 U.S.C. section 1983 provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Zubek was in uniform and on duty and therefore acting under color of state law. *See* Am. Comp. ¶¶ 14–16; Ans. ¶ 16. Thus, to survive summary judgment, Fiordalisi must show a genuine issue as to whether Zubek deprived him of a federal right. Because Zubek invokes qualified immunity, Fiordalisi must also show that there is a genuine issue as whether Zubek is immune.

## C. Official Immunity Defense on Summary Judgment

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Garrett v. Fisher Titus Hosp.*, 318 F.Supp.2d 562, 570 (N.D.Ohio 2004) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992), *cert. denied sub nom. Maciariello v. City of Lancaster*, 506 U.S. 1080, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993)).

Determining whether Zubek is immune involves a two-part inquiry: did he violate Fiordalisi's federal rights and, if so, was the right a "clearly established constitutional right of which a reasonable officer would have been aware." *Williams v. Cambridge Bd. of Ed.*, 370 F.3d 630, 636 (6th Cir.2004) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). The right cannot be asserted at a high level of generality; rather, the right must have been clearly established "in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable person would understand that what he is doing would violate that right." *Rogers v. Gooding*, 84 Fed.Appx. 473, 475–76, 2003 WL 22905308, at *3 (6th Cir.2003) (cite omitted).

## D. Fourth Amendment Analysis of Claim that Police Used Excessive Force Upon Arrest

■ A claim that a policeman used excessive force in the course of an arrest, investigatory stop or other "seizure" is analyzed under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 392–93, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). This requires a balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests. *See Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir.1995). Reasonableness is judged "from the perspective of the reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Klein v. Long*, 275 F.3d 544, 550 (6th Cir.2001) (cites omitted). "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," the court must pay "careful attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an

immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865.

## III.  ZUBEK'S MOTION TO STRIKE

### A.  Legal Standard

Under Federal Rule of Civil Procedure 56(e), all materials submitted in support of or in opposition to a motion for summary judgment must set forth facts that would be admissible at trial. *See Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir.1993); *Wiley v. US*, 20 F.3d 222, 226 (6th Cir.1994). An affidavit submitted on such a motion must be based on the affiant's personal knowledge. *See Tinsley v. GMC*, 227 F.3d 700, 703 (6th Cir.2000). Moreover, the court may not consider unauthenticated documents. *See, e.g., Saleh v. City of Warren*, 86 Fed. Appx. 866, 868, 2004 WL 162557, at *2 (6th Cir.2004) (refusing to consider unauthenticated correspondence and city council ordinances and resolutions submitted in opposition to summary judgment motion).

### B.  Discussion

#### 1.  *Mr. Fiordalisi's Affidavit*

Zubek moves to strike paragraphs ten through twelve of Fiordalisi's July 1, 2004 affidavit, which Fiordalisi submitted in opposition to the summary judgment motion. Paragraph ten reads:

> The emergency room doctor that attended to me thought that a CT scan should be taken of my head. I previously remembered this as an MRI scan, but that is erroneous. Thankfully the CT result was negative.

Pl.'s Opp'n to MSJ, Ex. B, ¶ 10. Zubek contends that paragraph ten is inadmissible hearsay because it relates the ER doctor's out-of-court statement that Fiordalisi's injuries warranted a CT scan, with the purpose of proving the truth of that statement. *See* Def.'s Mot. to Strike at 2–3.

■ To the extent that this paragraph relates the doctor's statement about the necessity of a CT scan, it is inadmissible hearsay. *See Basinger v. CSX Transp.*, 91 F.3d 143, 1996 WL 400182, at *6 (6th Cir.1996) (excluding portion of affidavit relating doctor's statement that the equipment plaintiff used at work could cause carpal tunnel syndrome), *cert. denied*, 519 U.S. 1111, 117 S.Ct. 950, 136 L.Ed.2d 838 (1997).

Paragraph ten *is* admissible, however, to the extent that it relates Fiordalisi's firsthand experience. *See* Pl.'s Opp'n to Mot. to Strike at 1. Thus the court considers paragraph ten only to the extent that Fiordalisi reports that he underwent a CT scan which came back negative. This fact did not help Fiordalisi and was not needed to reach the conclusion that he showed a genuine issue of material fact on his claims, his request for punitives, and Zubek's entitlement to immunity.

Zubek also moves to strike paragraph eleven, which reads:

> I am sure that a number of bystanders saw the violence inflicted on me. However, I never had a chance to talk to any and identify them as potential witnesses, because Officer Zubek continued to take me to the aforementioned holding cell immediately after hitting my head into the wall. I did not notice any police officers in the area where I was being conducted towards the airport building.

Pl.'s Opp'n to MSJ, Ex. B, ¶ 11. Zubek contends this paragraph is inadmissible because it is merely Fiordalisi's speculation that bystanders saw the incident. Fiordalisi responds that the paragraph relates his firsthand observation that he saw bystanders but could not speak with them. *See* Def.'s Mot. to Strike at 3–4; Pl.'s Opp'n at 2. Like paragraph ten, paragraph

eleven is admissible to the extent that it relates Fiordalisi's firsthand experience, i.e., that he did not see any other police officers in the vicinity and was not afforded the opportunity to speak with any bystanders.

■ Zubek also moves to strike paragraph twelve, which reads:

Officer Zubek's counsel, Shawn Schlesinger, admitted at the Case Management Conference ["CMC"] that I attended on September 26, 2003 that no police officers besides Zubek saw him escort me to the building or hit my head into it. I admitted at the same conference that my wife, Mary Anne Barbic, who accompanied me to the airport on the subject day, was inside the building looking for the relatives we were there to meet and did not see Officer Zubek's and my walk towards the building or the head hitting, either.

Pl.'s Opp'n to MSJ, Ex. B, ¶ 12. Zubek contends that his lawyer's out of court statement is not binding on him unless the lawyer had authority to make the statement and it related directly to the management of the litigation. *See* Def.'s Mot. to Strike at 4–5 (cite omitted). Paragraph twelve is admissible to the extent that it relates Fiordalisi's firsthand experience, i.e., his observation that his wife was inside the airport at the time of the incident and so did not see his interaction with Zubek.

### 2. *Mrs. Fiordalisi's Affidavit*

Zubek moves to strike paragraph six of Mrs. Fiordalisi's affidavit, which reads, "A number of bystanders saw the violence inflicted on Roger. However, I was preoccupied with what had happened to my husband and his health, and it did not occur to me to talk to any bystanders as potential witnesses." Pl.'s Opp'n to MSJ, Ex. C. Fiordalisi stipulates to its exclusion.

### 3. *Fiordalisi's Other Exhibits*

Zubek also moves to strike three more exhibits attached to Fiordalisi's opposition brief, on the ground that they are neither self-authenticating nor properly authenticated:

Ex. E Correspondence between Fiordalisi's counsel and the City of Cleveland regarding possible videotapes of the incident

Ex. F Medical records

Ex. G Police Report bearing the date and Zubek's name ands signature

As Zubek points out, the copies of the medical records and the police report are not certified copies.

Fiordalisi stipulates that the court may strike Exhibit E, his counsel's correspondence with the City. As to Exhibits F and G, Fiordalisi submits an affidavit stating that the police report and medical records attached to his opposition brief were produced by Zubek himself in response to discovery requests. *See* Pl.'s Opp'n to Mot. to Strike, Att. 1. Zubek does not deny this.

Federal Rule of Evidence 901(a) provides, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Under Rule 901(a), the court may admit evidence so long as there is a reasonable probability that the evidence is what it purports to be. *See U.S. v. Carlos Cruz*, 352 F.3d 499, 506 (1st Cir.2003) (cites omitted); *Wells v. Liddy*, 37 Fed. Appx. 53, 63, 2002 WL 331123, at *7 (4th Cir.2002); *US v. Dhinsa*, 243 F.3d 635, 658 (2d Cir.) (cite omitted), *cert. denied*, 534 U.S. 897, 122 S.Ct. 219, 151 L.Ed.2d 156 (2001); *US v. McGraw*, 62 Fed.Appx. 679, 681, 2003 WL 1796021, at *2 (7th Cir.2003). Here the jury could reasonably conclude

that by producing the medical records and police report in discovery, Zubek necessarily vouched that those documents were what they purported to be. Accordingly, the court cannot hold that as a matter of law, those documents are not authentic.

## IV. FIORDALISI'S CLAIMS

### A. Excessive Force Claim under Section 1983 and Fourth & Fourteenth Amendments

Fiordalisi's claim does not implicate unsettled law. "Both the right to be free from unreasonable seizures and the right to be free from the use of excessive force under the Fourth Amendment are clearly established." *Tapp v. Banks*, 1 Fed.Appx. 344, 348–49, 2001 WL 45103, at *4 (6th Cir.2001) (citing *Adams v. Metiva*, 31 F.3d 375, 386–87 (6th Cir.1994) (cite omitted)). The question for the jury will be whether a reasonable person in Zubek's position would have known he was violating those rights. *See Koehler v. Smith*, 124 F.3d 198, 1997 WL 595085, *4 (6th Cir.1997). The interaction between Fiordalisi and Zubek is open to more than one reasonable interpretation. "Where the actions taken by police officers are subject to more than one reasonable interpretation, the jury must find the facts, and then the court will make the qualified immunity determination based on those facts." *See id.* (cite omitted).

Zubek alleges that before he used any force, Fiordalisi had already committed several offenses: illegally stopping his car in a no-parking zone; pulling away from the stopped line of cars even though he observed Zubek writing tickets for other illegally parked drivers; attempting to flee after Zubek told him that he had disobeyed a direct order; and driving without a license. But these offenses are not so severe, without more, as to justify the degree of force alleged by Fiordalisi.

■ There is no evidence that Fiordalisi posed a threat to Zubek or other officers, airport patrons, or anyone else. And contrary to Zubek, Fiordalisi alleges that he did not flee, pull away or resist arrest, handcuffing or transport. Moreover, Fiordalisi maintains that he did not perceive Zubek as ordering him not to leave the no-parking zone. On summary judgment the court cannot make the credibility determinations needed to resolve this "he said, he said" dispute. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Taking Fiordalisi's allegations as true, a jury could justifiably infer that Zubek intentionally violated Fiordalisi's right to be free from excessive force.

■ Because the facts alleged by Fiordalisi could support a finding of unconstitutional excessive force, the court proceeds to the second step in the immunity analysis, whether the violation involved a "clearly established constitutional right of which a reasonable person would have known." At the time of the incident, established precedent clearly held that people have a constitutional right to be free from police use of excessive force. *See Russo v. Cincinnati*, 953 F.2d 1036, 1044 (6th Cir.1992). More specifically, precedent at that time held that it is excessive for police to use force when an arrestee is not resisting. *See Tapp v. Banks*, 1 Fed.Appx. 344, 2001 WL 45103, at *5 (6th Cir.2001) (officer may not strike a compliant suspect's legs); *Herring v. Lacy*, 81 F.3d 160, 1996 WL 109491, at *5 (6th Cir.1996) (using force against compliant suspect is excessive).

Zubek contends that Fiordalisi "began to pull away from him while walking to the terminal" and that he "used only the minimal amount of force necessary to regain control over Fiordalisi." But Fiordalisi claims that he cooperated and submitted peacefully to being handcuffed and walked

to the terminal building, such that Zubek had no reason to use any force.

Where "parties dispute virtually all of the essential facts surrounding [an] excessive force claim ... it is impossible to determine, without choosing between the parties' sharply different factual accounts whether the force used, objectively assessed, was reasonable." *Jackson v. Hoylman*, 933 F.2d 401, 403 (6th Cir.1991) (cites omitted). Because Fiordalisi is opposing summary judgment, the court cannot reject his allegation that he did not resist.

## B. First Amendment Retaliation Claim

Fiordalisi argues that Zubek constrained him from uttering protected speech by jerking the handcuffs and inflicting pain to retaliate for his criticism of Zubek. As the Supreme Court has held,

> The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. Speech is often provocative and challenging.... [But it] is nevertheless protected against ... punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.
>
> \*  \*  \*  \*  \*  \*
>
> ▇ The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.

*Houston v. Hill*, 482 U.S. 451, 461, 462–63, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (cites and internal quotes omitted). To establish a First Amendment retaliation claim, Fiordalisi will have to demonstrate speech protected by the First Amendment, an adverse action, and a causal connection between the two. *See Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir.2004). Zubek

makes no claim that the comments were likely to produce some "serious substantive evil" beyond his own annoyance or bruised ego. Taking Fiordalisi's allegations as true, the court cannot hold as a matter of law that Zubek did not use force to punish Fiordalisi for arguing and to deter him from speaking further.

## C. Fiordalisi's Assault and Battery Claims

▇ Ohio defines the tort of assault as "the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact." *Wilson v. Chatman*, 2003 WL 21262748, at \*3 (Ohio App. 3 Dist. June 3, 2003) (citing *Smith v. John Deere Co.*, 83 Ohio App.3d 398, 614 N.E.2d 1148, 1154 (1993) (internal cites omitted)). The alleged tortfeasor must have known "with substantial certainty that his or her act would bring about harmful or offensive contact." The threat or attempt must be coupled with a definitive act by someone who has the apparent ability to do the harm or commit the offensive touching. *Id.* For its part, battery is "an intentional harmful or offensive touching without the consent of the one being touched." *Anderson v. St. Francis–St. George Hosp.*, 77 Ohio St.3d 82, 671 N.E.2d 225, 227 (1996) (cite omitted).

▇ Taking Fiordalisi's factual allegations as true, a reasonable jury could conclude that Zubek committed battery and assault by intentionally making harmful and offensive contact with Fiordalisi, harming him and reasonably placing him in fear of further immediate physical harm.

Zubek responds that Fiordalisi fails to establish the state of mind required to overcome the immunity conferred by O.R.C. § 2744.03(A)(6)(b), which provides, in pertinent part, "[T]he employee is im-

mune from liability unless one of the following applies: * * * The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." With malicious purpose means a "willful or intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Hancock v. Ashenhurst,* 2004 WL 1405882, at *3 (Ohio App. 10 Dist. June 24, 2004) (quoting *Cook v. Cincinnati,* 103 Ohio App.3d 80, 658 N.E.2d 814, 818 (1995), *app. not allowed,* 74 Ohio St.3d 1444, 656 N.E.2d 344 (1995), *cert. denied,* 517 U.S. 1120, 116 S.Ct. 1353, 134 L.Ed.2d 521 (1996)). "Bad faith involves," *inter alia,* "a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will. . . ." *Id.*

Wantonness is a "failure to exercise any care whatsoever. [M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor. * * * Such perversity must be under such conditions that the actor must be conscious that his conduct will, in all likelihood, result in an injury." *Id.* (cite omitted). Lastly, "reckless" conduct is the same as "willful" misconduct, which is "something more than negligence" and involves "an intentional deviation from a clear duty."

Taking Fiordalisi's factual allegations as true, the court cannot find as a matter of law that Zubek did *not* act with a malicious purpose, in bad faith and wantonly, so as to disqualify him for the immunity offered by O.R.C. § 2744.03(A)(6)(b). Ascertaining Zubek's *mens rea* and his assessment of the risk of injury to Fiordalisi is the province of the jury.

### D. Request for Punitive Damages

A jury may assess punitive damages in a section 1983 action if it finds that the defendant's conduct was motivated by "evil motive or intent" or involved "reckless or callous indifference to the federally protected rights of others." *See Kolstad v. American Dental Association,* 527 U.S. 526, 536, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999). Fiordalisi alleges that Zubek acted in retaliation "for sadistic pleasure" and in a "sudden and wanton act of cruelty." *See* Pl.'s Opp'n at 5 and 8. Taking Fiordalisi's factual allegations as true, a jury could reasonably find that Zubek's actions were motivated by "evil motive or intent" or "reckless or callous indifference to" Fiordalisi's federally protected right to be free from excessive force at the hands of government agents.

### V. ORDER

Defendant Robert Zubek's motion to strike [doc. # 22] is granted in part and denied in part as described herein. Defendant Robert Zubek's motion for summary judgment [doc. # 18] is denied.

This order is immediately appealable.[2]

If this order is not appealed, trial will commence at 9:00 a.m. on Monday, June 6, 2005.

IT IS SO ORDERED.

---

**2.** Normally an order denying summary judgment is not final and immediately appealable, but "*Mitchell* [*v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)] clearly establishes that an order rejecting the defense of qualified immunity at *either* the dismissal stage *or* the summary judgment stage is a 'final' judgment subject to immediate appeal." *Behrens v. Pelletier,* 516 U.S. 299, 307, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (emphasis in original).