*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0112p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

————————————

MITCH HAYDEN,

*Plaintiff-Appellee,*

v.

No. 09-2103

PONTIAC POLICE OFFICER DWIGHT GREEN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 08-12044—Donald A. Scheer, Magistrate Judge.

Argued: November 30, 2010

Decided and Filed:  May 5, 2011

Before:  BATCHELDER, Chief Judge; ROGERS and KETHLEDGE, Circuit Judges.

————————————

**COUNSEL**

**ARGUED:** Eric S. Goldstein, JOHNSTON, SZTYKIEL, HUNT, GOLDSTEIN, FITZGIBBONS & CLIFFORD, P.C., Troy, Michigan, for Appellant.  Katrina Anne Murrel-Orlowski, Southfield, Michigan, for Appellee. **ON BRIEF:** Eric S. Goldstein, JOHNSTON, SZTYKIEL, HUNT, GOLDSTEIN, FITZGIBBONS & CLIFFORD, P.C., Troy, Michigan, for Appellant.  Daniel G. Romano, ROMANO LAW, P.L.L.C., Southfield, Michigan, for Appellee.

————————————

**OPINION**

————————————

KETHLEDGE, Circuit Judge.  A motorist who leaves the scene of an accident, and then disregards a rather obvious police indication to stop his vehicle, should not be completely surprised when later he is forcibly removed from it.  Officer Dwight Green removed Mitch Hayden from his vehicle under those circumstances here.  We hold that

1

Officer Green is entitled to immunity from suit, and we reverse the district court's order to the contrary.

I.

We take the district court's view of the facts in the light most favorable to Hayden, *see Johnson v. Jones*, 515 U.S. 304, 319 (1995), except that we reject his allegations to the extent they are clearly contradicted by "a videotape capturing the events in question." *Scott v. Harris*, 550 U.S. 372, 378 (2007). We have such a videotape here.

On February 10, 2008, at almost 11 p.m., on Highland Street in Pontiac, Michigan, Mitch Hayden crashed his 1991 Plymouth Acclaim into another driver's vehicle. Hayden was at fault in the accident, which was severe enough to deploy the Plymouth's airbags. Hayden left the scene without calling the police or providing his contact information to the other driver.

The other driver called the police. Officer Green responded. The other driver described Hayden's vehicle and said that the missing driver might have gone to a nearby hospital. Green drove to the hospital. Under the hospital canopy, near the emergency-room entrance, Green saw a vehicle matching the description he had been given. The vehicle had a smashed front end and was moving away from the canopy towards the hospital exit. Green moved his cruiser so that it faced Hayden's vehicle and blocked part of the travel lane. Then Green lit up his rollers. Hayden says that he stopped his vehicle at that point, but the in-car video from Green's cruiser belies the claim. Instead, the video shows that Hayden's vehicle continued moving forward and then went partially up onto the curb as if to go around the left side of the cruiser. In response, Green quickly backed up his cruiser to block the lane even more. Green then exited his vehicle, strode over to the Plymouth, opened Hayden's door, grabbed Hayden's clothing near the top of his chest, yanked once without effect, and finally pulled Hayden from his seat to the pavement in one fluid motion.

Hayden had not shifted the Plymouth out of drive, so it began rolling away. At first Green hesitated about what to do—he initially looked toward Hayden, much like a third baseman would check the runner at second base before throwing to first—and then ran after the Plymouth, leaving Hayden on the ground alone. Hayden chose to stand up, which caused Green to run back to him. Green told Hayden to "go down," which Hayden chose not to do at first, so Green said "go down" again and jerked Hayden back to the ground by his collar. After the commotion was over, Green questioned Hayden and decided not to take him into custody. Instead, Green drove him home.

Hayden later sued Green under 42 U.S.C. § 1983, alleging that he had used excessive force when he put Hayden to the ground and that Hayden hurt his back and shoulder as a result. Green moved for summary judgment on grounds of qualified immunity. The district court (in this case the magistrate judge) denied the motion.

This appeal followed.

## II.

## A.

"[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). We do not see any material facts in dispute in the record here, which means that the issues before us are purely legal. We therefore have jurisdiction.

## B.

When a defendant officer raises qualified immunity as an affirmative defense, the plaintiff bears the burden of demonstrating that the officer is not entitled to that defense. *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009). We review de novo the district court's denial of qualified immunity. *Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

Determinations of qualified immunity require us to answer two questions:  first, whether the officer violated a constitutional right; and second, whether that right was clearly established in light of the specific context of the case.  *Scott*, 550 U.S. at 377. We are now free to address those questions in whichever order we see fit.  *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

We need only address the question whether there was any constitutional violation here.  In Hayden's view, Green violated the Fourth Amendment's prohibition on "the use of excessive force by arresting and investigating officers."  *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006).  We decide that issue based on "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  In evaluating whether an officer's use of force was reasonable rather than excessive, we consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Smoak*, 460 F.3d at 783 (internal quotation marks omitted).  "This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case."  *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

Green's actions fall within that measure of deference.  At the time he approached the hospital canopy, Green had ample reason to believe that Hayden's vehicle was the one that had left the accident scene.  Green therefore had reason to believe that Hayden himself was a hit-and-run suspect, which by definition gave Green reason to think that Hayden might attempt "to evade arrest by flight."  *Smoak*, 460 F.3d at 783 (internal quotation marks omitted).  The record shows that Green then initiated a calibrated escalation of force.  First, he lit up his rollers and partially blocked the roadway. Virtually any law-abiding driver would have simply stopped his vehicle at that point, but the video shows that Hayden chose otherwise.  Instead, he tried to drive his Plymouth around Green's vehicle, to the point where the Plymouth is tilted to one side with at least one wheel up on the curb.

By then, Green could reasonably believe that Hayden was a hit-and-run suspect who had refused to stop his vehicle despite a police officer's obvious indication that he should. So Green escalated his use of force. The escalation was modest: Green did not ram Hayden's vehicle or point a firearm at him. What he did, instead, was use the force necessary to get Hayden out of the car. Given the circumstances that Green then faced, that was an eminently reasonable decision. The decision was reasonably executed as well. Green did not follow Hayden down to the pavement with his own body, so as to crush him, or pummel, kick, or knee Hayden once he got there. He simply pulled Hayden from seat to ground without piling on. Green used the minimum force necessary to remove Hayden forcibly from the vehicle.

That Green removed him forcibly from the Plymouth, in Hayden's view, is precisely the problem here. Hayden thinks that Green should have asked Hayden to step out of the Plymouth first. We think the time for constitutionally mandated requests of that sort had passed when Hayden tried to drive his vehicle around Green's with the rollers flashing. Hayden also argues that he actually did stop his vehicle before Green approached it, but that claim is plainly contradicted by the video, so we disregard it. *See Scott*, 550 U.S. at 378.

Hayden next argues that we should deny immunity to Green under our decision in *Smoak*, which Hayden says is his best case. That case, like this one, involved an incident when a police officer forcibly put a motorist on the pavement; and that case too had a video. The similarities essentially end there. In *Smoak,* the police pulled over a family traveling in their station wagon on the interstate, mistakenly suspecting that they had committed a robbery. The officers put each member of the family on their knees on the paved shoulder, handcuffed them, and then shot the family dog when it leapt out of the vehicle, its tail wagging, apparently in search of its owner. The family witnessed the shooting and the father stood up in horror when it happened. The police knocked him down hard enough that he required hospitalization that night. 460 F.3d at 774-75. Suffice it to say that we have nothing of this sort here. There was no constitutional violation when Green first put Hayden on the ground.

That leaves the second time that Green put Hayden on the ground, this time by jerking his collar downward. Our analysis of this put-down follows our analysis of the first one. Green continued to have reason to think that Hayden posed a flight risk, except that this time Hayden could have only fled on foot; and to flee on foot, Hayden would have to be standing up. It was reasonable, therefore, for Green to keep Hayden on the ground, and then to put him back there after he stood up and disregarded Green's first directive to "go down." And again the amount of force that Green used to put him there was reasonable. He did not beat, kick, or even handcuff Hayden. He simply used the minimum force necessary to get Hayden back on the ground.

The bad choices in this encounter were not Officer Green's. His actions were reasonable, and he did not violate Hayden's constitutional rights. We reverse the district court's order denying qualified immunity, and remand the case for further proceedings consistent with this opinion.