NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0227n.06

No. 17-5563

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
May 01, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LASHAWN WILLIAMS, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| DON GODBY, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:    BATCHELDER, GILMAN, and ROGERS, Circuit Judges.

**ALICE M. BATCHELDER**, **Circuit Judge.**   In this interlocutory appeal from the district court's denial of a claim of qualified immunity, defendant-appellant Officer Don Godby argues that plaintiff-appellee LaShawn Williams's evidence did not create a genuine issue of material fact to overcome Officer Godby's motion for summary judgment based on qualified immunity for Williams's Fourth Amendment excessive-force and state-tort false-imprisonment claims.  For the reasons that follow, we have appellate jurisdiction and we AFFIRM.

I.

This case stems from the arrest of Williams in the parking lot of her apartment complex on October 15, 2013, where she and a friend, Kaia Loving, were sitting in Loving's car, drinking and laughing—apparently quite loudly.  As they sat there, Officer Godby approached the driver's side of the car and inquired whether the two women had been fighting.  Although the women

denied any such activity, Officer Godby called for backup, engaged the women in conversation, had Williams exit the car, patted her down, and found an airplane bottle of liquor. Officer Godby and his backup officer arrested Williams, taking her to the ground and breaking her collarbone in the process.

Williams was charged with public intoxication, assault, and resisting arrest. During the course of the state court proceedings surrounding these charges, Williams filed a motion to suppress, which the Rutherford County Circuit Court heard. The County Circuit Court determined that "Officer Godby did not have reasonable suspicion to continue the encounter with Williams once he ascertained that Williams and Loving were not fighting," and ordered that all evidence "accumulated following the illegal seizure" be suppressed and the charges be dismissed.

Williams initiated the instant litigation in the United States District Court for the Middle District of Tennessee on October 10, 2014, bringing a 42 U.S.C. § 1983 action against Officer Godby and the Town of Smyrna, alleging Fourth Amendment excessive force, and violations of state law for false imprisonment and negligent infliction of emotional distress. Officer Godby and the Town of Smyrna filed separate motions for summary judgment on July 18, 2016. The district court granted summary judgment for the Town of Smyrna on all claims. Officer Godby asserted the defense of federal qualified immunity as against these claims, and the district court granted summary judgment on the negligent-infliction-of-emotional-distress claim but denied summary judgment on the Fourth Amendment excessive-force claim and state law false-imprisonment claim. Officer Godby appeals the district court's denial of federal qualified immunity on the Fourth Amendment excessive-force claim and state-tort false-imprisonment claim.

II.

Qualified immunity shields government officials in the performance of discretionary functions from standing trial for civil liability unless their actions violate clearly established rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A plaintiff who brings a § 1983 action against such an official bears the burden of overcoming the qualified-immunity defense. *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013). At the summary-judgment stage, the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established. *Id.* at 680. In so doing, the plaintiff must, at a minimum, offer sufficient evidence to create a "genuine issue of fact," that is, "evidence on which [a] jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 256 (1986).

In other words, if the district court determines that the plaintiff's evidence would reasonably support a jury's finding that the defendant violated a clearly established right, the court must deny summary judgment. *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015); *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016). And though the denial of summary judgment is ordinarily not immediately appealable, the "denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an [immediately] appealable 'final decision' within the meaning of 28 U.S.C § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

Thus, we may decide an appeal challenging the district court's *legal* determination that the defendant's actions violated a constitutional right or that the right was clearly established. *Id*. We may also decide an appeal challenging a *legal* aspect of the district court's factual determinations, "such as whether the district court properly adopted the plaintiff's version of the facts." *Roberson v. Torres*, 770 F.3d 398, 402 (6th Cir. 2014)). And we may decide, as a *legal*

-3-

question, an appeal challenging the district court's factual determination insofar as the challenge contests that determination as "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014).

We may not, however, decide an appeal challenging the district court's determination of "'evidence sufficiency,' *i.e.*, which facts a party may, or may not, be able to prove at trial." *Johnson v. Jones*, 515 U.S. 304, 313 (1995). Because such a challenge is purely fact-based, lacking any issue of law, it "does not present a legal question in the sense in which the term was used in *Mitchell*," *Plumhoff*, 134 S. Ct. at 2019, and is therefore not an appealable "final decision" within the meaning of 28 U.S.C. § 1291. These types of prohibited fact-based ("evidence sufficiency") appeals challenge directly the plaintiff's allegations (and the district court's acceptance) of "what [actually] occurred[ ] or why an action was taken or omitted," *Ortiz v. Jordan*, 562 U.S. 180, 190 (2011), or who did it, *Johnson*, 515 U.S. at 307, or challenge "nothing more than whether the evidence could support a [jury's] finding that particular conduct occurred," *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). We have also explained that the defendant-appellant may not challenge the inferences the district court draws from those facts, as that too is a prohibited fact-based appeal. *See Romo v. Largen*, 723 F.3d 670, 674–75 (6th Cir. 2013).

In the event that legal and factual challenges are confused or entwined, "we must separate an appealed order's reviewable determination (that a given set of facts violates clearly established law) from its unreviewable determination (that an issue of fact is 'genuine')." *Roberson*, 770 F.3d at 402 (citing *Johnson*, 515 U.S. at 319) (quotation marks omitted). Similarly, we can separate an appellant's reviewable challenges from its unreviewable ones.

*McDonald*, 814 F.3d at 813; *DiLuzio*, 796 F.3d at 610; *Romo*, 723 F.3d at 674 & n.2 (accepting appellate jurisdiction by ignoring the "factual disputations" and "ruling on what [wa]s properly before us [while] say[ing] nothing about what [wa]s jurisdictionally not before us"). That is, we can "ignore the defendant's attempts to dispute the facts and nonetheless resolve the legal issue, obviating the need to dismiss the entire appeal for lack of jurisdiction." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005).

In so doing, because we defer to the district court's factual assessments, ideally we need look no further than the district court's opinion for the facts and inferences cited expressly therein. *McDonald*, 814 F.3d at 813; *DiLuzio*, 796 F.3d at 611. That is, we can often merely adopt the district court's recitation of facts and inferences. *See Johnson*, 515 U.S. at 319. And we find it appropriate to do so here, given Officer Godby's arguments and Williams's counterarguments. Thus, in deciding this appeal, we adopt the district court's articulated facts and inferences.

It bears mention, however, that, in adopting or accepting the district court's factual determinations for the purpose of deciding this interlocutory appeal, we are not ourselves making any findings of fact or inferences for purposes of any subsequent proceedings. *McDonald*, 814 F.3d at 813; *DiLuzio*, 796 F.3d at 611; *see also Nelson v. Shuffman*, 603 F.3d 439, 448 (8th Cir. 2010) ("Whether [the plaintiff] is ultimately able to prove the alleged factual bases for his claims is a matter left for the finder of fact [on remand]—not the appellate court on interlocutory appeal.").

## III.

Though Officer Godby claims to accept Williams's version of the facts, many of his arguments in his brief on appeal rest on his own view of disputed facts and the inferences he

would draw from them. Despite basing many of his arguments on his version of these disputed facts, Officer Godby conceded in his reply brief and at oral argument that he must accept Williams's facts and we must draw all inferences in favor of Williams. And because Officer Godby does not attempt to argue that the record blatantly contradicts the facts that Williams alleged and the district court accepted, we are not faced with a situation similar to that in *Scott v. Harris*. *See* 550 U.S. at 380–81 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Therefore, rather than dismiss the appeal outright, we will discard the fact-based or "evidence sufficiency" portion of the appeal—that is, any challenge to the district court's view of the facts or its associated inferences and the frequent challenges to Williams's version of the record-supported evidence—and will resolve the legal challenge based on those given facts and inferences. *See McDonald*, 814 F.3d at 814 (citing *Estate of Carter*, 408 F.3d at 310); *DiLuzio*, 796 F.3d at 611–12 (same).

In finding a "genuine issue of material fact" (i.e., deciding that Williams had produced sufficient "evidence on which [a] jury could reasonably find for [her]," *see Anderson*, 477 U.S. at 252), the district court identified certain facts and drew certain inferences. According to that version of the facts, Williams and Loving were sitting in Loving's car in the parking lot of Williams's apartment complex after working the night shift. Officer Godby approached the car on the driver's side where Loving was sitting, told the women that he thought he heard screams coming from the car, and asked the women if they had been fighting. Williams and Loving replied that they were fine and had just been laughing and being loud. Officer Godby claims that he saw Williams make a sudden hand movement, as if to hide something between the car door

and the passenger's side seat. He claims that this hand movement made him suspicious, so he called for backup.

While waiting for backup, Officer Godby asked the two women for identification. Loving handed Officer Godby her driver's license, but Williams had left hers in her apartment. Officer Godby refused to allow Williams to go inside and retrieve it because of safety concerns. Officer Godby claims that when he offered to call the apartment-complex office to confirm that Williams lived there, Williams became "extremely irate." Williams disputes this, saying that she was "insistent and not irate" and simply did not want a police officer calling her apartment complex because she did not want a mark on her record with the apartment complex.

At this point in the conversation, Officer Godby walked over to the passenger's side of the car where Williams was sitting. Williams admits that when Officer Godby was speaking to her, she raised her voice and used curse words, though the curse words "were not directed at Officer Godby." Williams admits that she was upset, acting "wild," and "getting loud," and that, during the encounter, she stated that she "was not going to be harassed by no fucking police."

Once Officer Godby's backup arrived, Officer Godby asked Williams to get out of the car. Williams did so voluntarily. Officer Godby performed a light pat-down of Williams's person and, finding an unopened airplane bottle of "99" brand liquor in Williams's pocket, he asked Williams to turn around and place her hands behind her back, which she also did willingly. Officer Godby then attempted to handcuff Williams, but the parties disagree about the precise sequence of events here. Officer Godby claims that Williams became belligerent and started swinging her arms and kicking him, at which point he handcuffed her. Williams claims that Officer Godby "yanked" her arm and handcuffed her and that she did not kick him or otherwise resist. The dash-cam footage and audio does not confirm or refute either side's story. What it

does confirm is that Officer Schoon yelled "get on the ground" and that Officers Godby and Schoon took Williams to the ground. Williams later described these events as happening very quickly, like "bam."

After being taken to the ground, Williams complained of shoulder pain. The officers called an ambulance to the scene to evaluate her. The parties dispute whether Williams could not be taken to the hospital by the ambulance because she was acting belligerently. Whatever the reason, the police transferred Williams to the hospital in the back of Officer Schoon's car; she did not ride in the ambulance. At the hospital, tests revealed that Williams had a blood alcohol level of 0.159 and had a broken left clavicle.

Back at the apartment complex, Loving consented to Officer Godby's searching her car. Officer Godby found twelve airplane bottles of liquor, but did not find drugs or weapons.

IV.

Review of a qualified immunity claim is a two-part inquiry. First, we must determine "whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). "[A]ssuming the violation is established," the second part of the inquiry is whether the "right was clearly established" at the time of the violation. *Id.* The two parts of this inquiry need not be addressed in order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). For a defendant to be denied qualified immunity, he must have violated a plaintiff's constitutional right, *and* the right violated must have been clearly established at the time of the incident.

A.

To determine whether the plaintiff's constitutional rights were violated in the context of Fourth Amendment excessive-force claims, we use the "objective reasonableness" test

articulated in *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). The *Graham* test requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests." *Id.* at 396. The reviewing court cannot use "the 20/20 vision of hindsight." *Id.* Instead, the official's actions must be viewed from "the perspective of a reasonable officer on the scene." *Id.* *Graham* requires the court to examine "the facts and circumstances of each particular case," balancing "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* When determining whether the rights violated were "clearly established," we must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

We agree with the district court that, accepting Williams's record-supported evidence to decide the motion as a matter of law, Officer Godby was not entitled to qualified immunity for the Fourth Amendment excessive-force claim. First, none of the three *Graham* factors weighs in favor of a use of violent force to arrest Williams. Officer Godby approached two women who were laughing and talking in a car. These women were, at most, under suspicion of public intoxication. Williams admits she was verbally aggressive, but she never acted in a physically aggressive or threatening manner. Williams answered all of Officer Godby's questions; she also complied with his instructions, including to get out of the car and to put her hands behind her back. Though Williams was disrespectful during her interaction with Officer Godby, the facts available do not show that the officers were justified in taking her to the ground with such force as to break her collarbone.[1] Second, there is no question that the right to be free from excessive

---

[1] As the district court noted, a factual dispute exists as to whether Williams kicked Officer Godby, whether Officer Godby informed Williams why she was asked to step out of the car, and whether Officer Godby informed

force during an arrest was clearly established as of October 15, 2013. *See McDonald*, 814 F.3d at 814. Under the specific facts alleged and conceded, at the time of Williams's arrest a reasonable officer would have been "on notice that [his] conduct"—here using such force to bring Williams to the ground for, at most, suspicion of public intoxication—"violate[d] established law." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *cf. Grawey v. Drury*, 567 F.3d 302, 311 (6th Cir. 2009) (holding that an officer violated a suspect's clearly established Fourth Amendment rights when "he pepper spray[ed] a suspect who has not been told she is under arrest and is not resisting arrest"). We affirm the judgment of the district court on the purely legal determination that, at this stage of the proceedings, Officer Godby was not entitled to qualified immunity for Williams's Fourth Amendment excessive-force claim.

B.

Nor is Officer Godby entitled to federal qualified immunity for Williams's state-tort claim of false imprisonment.[2] At oral argument, Officer Godby's attorney explicitly conceded that he did not argue any state-law basis for immunity; the appeal of the district court's denial of summary judgment regarding Williams's state-tort false-imprisonment claim was based wholly on the theory that Officer Godby was entitled to federal qualified immunity. *LaShawn Williams v. Don Godby*, No. 17-5563 (6th Cir. Jan. 24, 2018).[3] In support of his federal qualified-immunity argument, Officer Godby cites only *Crockett v. Cumberland College*, 316 F.3d 571 (6th Cir. 2005), which addressed a district court's denial of qualified immunity for federal constitutional claims brought under § 1983. *See id.* at 579–584. Officer Godby identifies no

---

Williams that she was under arrest. Whether a reasonable officer would have used the kind of force Officer Godby did to take down Williams is a question for the jury.

[2] Brought pursuant to Tenn. Code Ann. § 29-20-205.

[3] Officer Godby's attorney also conceded that any references in his brief to common law state-immunity were included only as a "tie[] to the federal qualified immunity analysis."

case where this circuit or any other has found federal qualified immunity to be an available defense to state law claims. *See Andreu v. Sapp*, 919 F.2d 637, 640 (11th Cir. 1990) ("Qualified immunity is a defense to federal causes of action and does not protect officials from claims based upon state law."); *see also D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995) ("Because qualified immunity is a defense only to federal claims, we hold that the district court erred in concluding that defendants were entitled to qualified immunity on the claims for violations of state law."). That the Tennessee state-law immunity analysis "parallels the federal qualified-immunity analysis," *Fowler v. Burns*, 447 F. App'x 659, 663 (6th Cir. 2011), does not mean that a claim of federal qualified immunity alone suffices to invoke state-law immunity for state-tort claims. We decline to apply federal qualified-immunity law to Williams's state-tort claims as Officer Godby would have us do.

## V.

For the foregoing reasons, we AFFIRM the judgment of the district court denying Officer Godby's claim of federal qualified immunity for Williams's Fourth Amendment excessive-force claim and state-tort claim of false imprisonment.