**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 19a0451n.06

Case No. 18-5391

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 27, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JUDY HODGE, | ) | |
| | ) | |
|     Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| BLOUNT COUNTY, TENNESSEE and | ) | TENNESSEE |
| HENRY VAUGHN, | ) | |
| | ) | |
|     Defendants-Appellants | ) | |

BEFORE: DONALD, LARSEN, and NALBANDIAN, Circuit Judges

**BERNICE BOUIE DONALD, Circuit Judge.** On June 10, 2015, Larry Hodge left the scene of a minor traffic accident. The driver of the other vehicle called the authorities and began following Hodge, who, she reported, was driving at a high rate of speed. Eventually, Henry Vaughn, an officer with the local sheriff's department, intercepted Hodge and pulled him over. Before Vaughn got out of his vehicle, Hodge's truck lurched forward twice.

Vaughn initially approached Hodge's vehicle on foot with his firearm drawn and pointed at Hodge. Vaughn told Hodge to exit the vehicle, but Hodge did not do so. Vaughn then holstered his weapon and opened the door to Hodge's truck. Vaughn repeated his order that Hodge get out of the vehicle numerous times. Hodge, again, did not do so and replied each time, "what did I do?" After approximately two minutes, Vaughn "violently jerked" Hodge out of the vehicle,

causing Hodge to hit his face on the pavement. Hodge, who was already in poor health, was never the same after the incident. He died shortly after, in December of 2015.

Larry Hodge's wife, Judy Hodge, filed suit on June 10, 2016, alleging, among other things, that Vaughn violated Mr. Hodge's Fourth Amendment right to be free from excessive force under 42 U.S.C. § 1983. At summary judgment, the district court denied qualified immunity to Vaughn and denied summary judgment because there were material factual issues in dispute. Vaughn filed an interlocutory appeal of that order. For the forthcoming reasons, we **AFFIRM**.

## I. Background

On June 10, 2015, Larry Hodge was driving in Blount County, Tennessee.[1] At the time, Hodge was a sixty-seven-year-old man with vascular dementia, but he could still complete certain tasks, like driving his vehicle around town. While driving that afternoon, he struck the side mirror of Robin Bailey's oncoming vehicle.

Hodge did not stop after the accident occurred, so Bailey turned around and began following him. She also called 911 and told the operator that Hodge was driving at a high rate of speed.

Henry Vaughn, an off-duty property-and-evidence technician employed by the Blount County Sheriff's Department, was in the area and responded to the call. Approximately seventeen minutes after Hodge struck Bailey's vehicle, Vaughn spotted Hodge's truck stopped at a stop sign, and Vaughn activated his siren and blue lights.

---

[1]We only have jurisdiction over this appeal to the extent it presents a question of law. *See v. City of Elyria*, 502 F.3d 484, 489-90 (6th Cir. 2007). In qualified immunity cases where the facts are in dispute, appellate jurisdiction exists only if we accept the plaintiff's version of the facts as true and determine whether, as a matter of law, the defendant is entitled to qualified immunity. *Farm Labor Org. Comm'n v. Ohio State Highway Patrol*, 308 F.3d 523, 531 (6th Cir. 2002). Vaughn has accepted Hodge's version of the facts as true for purposes of this appeal; therefore, we may proceed.

Hodge stayed put, and Vaughn pulled up and to the left of Hodge's truck. Bailey pulled in behind Hodge. While Vaugh was still in his vehicle, Hodge's truck lurched forward twice. Vaughn exited his vehicle with his firearm drawn and pointed at Hodge.

Vaughn approached Hodge's truck and ordered Hodge to get out of the vehicle, but Hodge did not do so. Vaughn testified that, after the second time he ordered Hodge out of the vehicle, Vaughn saw that Hodge's hands were on the steering wheel. Vaughn then holstered his gun and opened the driver's side door. What transpired next is disputed by the parties. Because we must view the facts in the light most favorable to the plaintiff, we recite her version.

Peggy Hamilton, a passerby who arrived at the scene of the incident once Vaughn had opened Hodge's vehicle door, testified that Hodge was sitting idly in his truck with his hands on the steering wheel. Over the course of approximately two minutes, she heard Vaughn tell Hodge to get out of the vehicle numerous times. Hamilton stated that each time Vaughn told Hodge to get out of the vehicle, Hodge responded, "What did I do?" According to Hamilton, Hodge did not physically resist and kept his hands on the steering wheel throughout the encounter. Hamilton did not see Vaughn remove Hodge from the truck, but Bailey did. She testified that Vaughn "violently jerk[ed]" Hodge out of his vehicle and onto the ground, where Hodge "hit his nose hard on the pavement."

Hodge suffered injuries, and his already poor health continued to decline until he died on December 27, 2015. His wife filed suit on June 10, 2016, alleging, among other things, a claim under 42 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment.

Vaughn filed a motion for summary judgment, arguing that he was entitled to qualified immunity. The district court, on review of the evidence the parties submitted, denied Vaughn's claim. Vaughn filed an interlocutory appeal.

**II.**

"We review a district court's denial of qualified immunity *de novo*." *Gregory v. City of Louisville*, 444 F.3d 725, 742 (6th Cir. 2006). Our qualified immunity analysis has two prongs: "1) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff has shown that a constitutional violation occurred; and 2) whether the right was clearly established at the time of the violation." *Harris v. City of Circleville*, 583 F.3d 356, 365 (6th Cir. 2009) (citing *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009)). If the answer to either of those questions is no, the officer is entitled to qualified immunity, and the suit against him may not proceed. *Moldowan v. City of Warren*, 578 F.3d 351, 369 (6th Cir. 2009) ("[T]he qualified immunity privilege entitles a party to '*immunity from suit* rather than a mere defense to liability[.]'"). Courts may address these issues in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The constitutional violation alleged here is that Vaughn used excessive force when he seized Hodge. *See Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006) ("The Fourth Amendment prohibits the use of excessive force by arresting and investigating officers.") (citation omitted). In evaluating whether an officer used excessive force, we ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Resolving such a claim "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

To satisfy the clearly-established prong, a plaintiff must demonstrate that "'[t]he contours of the right [were] sufficiently clear [such] that a reasonable official would [have] underst[ood] that what he [was] doing violate[d] that right.'" *Brown v. Lewis*, 779 F.3d 401, 412 (6th Cir. 2015) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). We "need not . . . find a case in which 'the very action in question has previously been held unlawful,' but, 'in the light of pre-existing law, the unlawfulness must be apparent.'" *Comstock v. McCrary*, 273 F.3d 693, 711 (6th Cir. 2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

We typically analyze excessive force cases in segments, and the officer's conduct must be reasonable at every stage. *Dickerson v. McClellan*, 101 F.3d 1151, 1161 (6th Cir. 1996). The facts underlying this claim can be broken into two segments: (1) Vaughn approaching Hodge's truck with his gun drawn and pointed at Hodge, and (2) Vaughn forcefully removing Hodge from the vehicle after Vaughn had holstered his weapon and opened Hodge's vehicle door.

The district court held that the first segment could not support a claim for excessive force. Therefore, that segment is not at issue. As to the second segment, we find that the plaintiff has satisfied both prongs. First, the force Vaughn used when Hodge was sitting in his car was excessive under the Fourth Amendment, and second, the right to be free from such force was clearly established at the time of the violation.

In *Giannola v. Peppler*, 142 F.3d 433 (6th Cir. Feb. 23, 1998) (table) (per curiam), an officer observed Filippo Giannola driving down a highway ten to twenty miles per hour below the speed limit and with his left turn-signal flashing. *Id.* The officer determined that Giannola was a danger to others and activated his overhead lights. *Id.* Giannola did not respond but, instead,

continued along at the same pace. The officer then used his spotlight and public address system to instruct Giannola to stop. *Id.* Despite those efforts, Giannola kept driving (slowly), while also obeying all traffic signals. *Id.* Eventually, two additional officers joined the low-speed "chase" and were able to pull in front of Giannola and force him off the roadway. *Id.* Once stopped, the officers approached Giannola's car on foot with their guns drawn and instructed him to exit the vehicle. *Id.* Giannola, who did not speak English, stayed inside his car and began speaking Italian. *Id.* The officers holstered their firearms and, according to Giannola, "grabbed [him,] pulled him out of the truck, pulled his jacket over his head, knocked him to the ground, and handcuffed him." *Id.* We held that the officers had used excessive force and were not entitled to qualified immunity. *Id.*

Based on *Giannola*, Vaughn should have known that the force he used was excessive. After Vaughn holstered his firearm, he approached Hodge's truck, and for two minutes, Vaughn told Hodge to get out of his vehicle. Hodge, like Giannola, only passively resisted the officer's commands. Vaughn then violently yanked Hodge out of the vehicle, causing him to hit his head on the concrete pavement. Thus, according to the plaintiff's version of the events, Vaughn used at least as much force as did the officers in *Giannola*. Because we held that the force used there was excessive, a reasonable officer in Vaughn's shoes would have known that he could not violently throw Hodge to the pavement when he was sitting in a car, passively resisting verbal orders to exit the vehicle. *See Coles v. Eagle*, 704 F.3d 624, 629 (9th Cir. 2012) ("[F]ailing to exit a vehicle is not 'active resistance' . . . .").

Similarly, a reasonable officer would recognize that none of the other *Graham* factors supported the level of force Vaughn used. Vaughn suspected Hodge of a hit-and-run accident involving minor property damage—a mere misdemeanor in Tennessee. *See* Tenn. Code Ann.

§§ 55-10-102, 55-10-203(a)(4), 55-10-207(b)(1) & (h)(1); *see also Harris v. City of Circleville*, 583 F.3d 356, 366 (6th Cir. 2009) ("Relatively speaking, these are not particularly serious crimes and none of them involve violence."). There was no apparent risk of immediate threat to Vaughn or anyone else; Hodge was an elderly man and obviously confused—not intoxicated, belligerent, or even argumentative. Hodge was certainly not brandishing a weapon—he had his hands on the steering wheel in plain sight throughout the encounter. *See Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013) (stating that officers must "take into account 'the diminished capacity of an unarmed detainee . . . when assessing the amount of force exerted'" (quoting *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 904 (6th Cir. 2004)).

And even if *some* force were constitutionally reasonable, the degree of force at issue here— "violently jerk[ing]" Hodge out of the vehicle hard enough for him to hit the ground face-first and sustain serious injuries—would have been clearly over the line under *Giannola*. *See also Martin*, 712 F.3d at 962 ("[T]he question is not whether any force was justified[,] [but] instead, whether [the officer] could reasonably use the *degree* of force employed . . . ."); *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 776 (6th Cir. 2004) (stating that force used must "not be unconstitutionally disproportionate in degree to the circumstances"). Indeed, we addressed this exact issue in *Anderson v. Antal*, 191 F.3d 451 (6th Cir. 1999) (unpublished table decision). In *Anderson*, an officer also encountered a plaintiff during a traffic stop who "refused to get out of the car." *Id.* at *4. But unlike the officer in *Giannola*, the officer used an appropriate amount of force "to get her out of the car." *Id.* "Although [the] Officer . . . did forcibly remove Plaintiff from the car by grabbing her arm, . . . [the] Officer . . . pulled her out by one arm only . . . and *he did not throw her to the ground*." *Id.* (emphasis added). While admittedly this "treatment of Plaintiff was rough," it was not violent. *Id.* In contrast, Vaughn's conduct—violently jerking

Hodge face-first into the ground—went much further, as did the officers in *Giannola*. Vaughn is thus not entitled to qualified immunity.

To resist this outcome, Vaughn relies on *Hayden v. Green*, 640 F.3d 150 (6th Cir. 2011), but that case is distinguishable. Although *Hayden* also involved a hit-and-run, the similarities end there. *Id.* at 152. In *Hayden*, the plaintiff left the scene of a serious car accident, and soon thereafter, a police officer discovered him sitting in his car outside of a hospital. *Id.* The officer pulled in front of the plaintiff, blocking his exit, and turned on his lights. *Id.* The plaintiff then drove onto a curve to go around the police cruiser. *Id.* The officer got out and, without warning or instruction, immediately pulled the plaintiff out of the car and onto the pavement. *Id.* In other words, the plaintiff in *Hayden* was *actively* attempting to evade arrest up to the point in which the officer removed him from the vehicle. Moreover, there was no break in time that should have allowed the tensions to be defused. *Hayden* is thus distinguishable from *Giannola*—and the case before this Court presently—because in *Giannola* the plaintiff had been *passively* resisting the officer's commands and sufficient time had passed between the "chase" and the constitutional violation.

III.

Based on the foregoing, we **AFFIRM** the district court's denial of qualified immunity to Officer Vaughn.